UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Case No. 22-CR-246 (JDB) |
| JEAN PELICE, | : |
| Defendant. | : |

## GOVERNMENT OPPOSITION TO MOTION TO SUPPRESS STATEMENTS

The United States, by and through the undersigned counsel, hereby opposes the defense motion to suppress (i) the defendant's statement from April 28, 2022; (ii) the defendant's statement from his first law enforcement interview after being arrested; and (iii) all other statements to law enforcement after the April 28, 2022 interview, which the defense argues are tainted by the April 28, 2022 interview. For the following reasons, the motion must be denied.

## BACKGROUND

Defendant Pelice is charged with participating in the hostage taking of 16 American missionaries in Haiti as a member of the violent gang 400 Mawozo.[1] The essential facts of this case are well known to the Court, having presided over the trial of *United States v. Germine*, 22-cr-161, involving the same hostage-taking conspiracy.

After the hostages heroically escaped, Mr. Pelice traveled from Haiti to the Dominican Republic and made various statements on social media, confessing to his involvement in the charged crime. The defendant then spoke voluntarily with U.S. law enforcement over the

---

[1] The defense states, "It is not disputed that at the time of the alleged kidnapping of the 16 missionaries, Mr. Pelice was not in Haiti nor was he participating in the activities of 400 Mawozo . . . ." Def.'s Mem. at 2 (ECF Docket No. 48). On the contrary, the government alleges—and the Indictment charges—that Mr. Pelice was in Haiti at the time of the hostage taking, that he was participating in the activities of 400 Mawozo, and was responsible for holding the missionaries hostage.

telephone.² On April 28, 2022, U.S. law enforcement met in person with Mr. Pelice and interviewed him in the Dominican Republic. At the time, Mr. Pelice was not in the custody of the U.S. or other authorities. He was residing at a hotel, and the interview was conducted at the Departamento Nacional De Investigación. He was told by law enforcement that he could leave the interview if he wanted to. No agents, guards, or anyone else prevented him from leaving. Nor did anyone suggest to Mr. Pelice that he could not leave. The interview was entirely voluntary, and law enforcement assured Mr. Pelice that the interview was voluntary. Simply put, Mr. Pelice spoke with U.S. law enforcement on April 28, 2022, as part of a voluntary, non-custodial interview.

Mr. Pelice traveled to the United States with U.S. authorities in May of 2022, and he was arrested by U.S. authorities once he arrived in Miami, Florida. There was no interview of the defendant on the day of his arrest.³ At the time of his arrest, agents read Mr. Pelice his *Miranda* rights in Haitian Creole. Mr. Pelice requested to speak with the prosecutor, AUSA Seifert, and granting the defendant's request, law enforcement called AUSA Seifert. Over the telephone, she explained to Mr. Pelice that she looked forward to speaking with him but could not speak with him until he first spoke with his attorney. Her statement to Mr. Pelice was translated into Haitian Creole. There was no interview of Mr. Pelice at the time of his arrest; no substantive information was solicited from him at the time of his arrest; and the government does not intend to admit into evidence any statements of Mr. Pelice from the time of his arrest.

Mr. Pelice's first law enforcement interview after his arrival in the United States was a

---

² The defense motion does not mention, let alone seek to suppress, the telephonic communications that occurred between the defendant and law enforcement before April 28, 2022.

³ The defense asserts that, upon his arrival in the United States, Mr. Pelice was "fingerprinted and interviewed by law enforcement." Def.'s Mot. at 3. Although it is true that, on the day of his arrest, the defendant was fingerprinted, the defense's suggestion that he was interviewed on that day is false.

voluntary debriefing that occurred on July 8, 2022. His counsel, Alfred Guillaume III, was present for the voluntary debriefing. In advance of the interview, Mr. Pelice and his attorney were given a proffer letter from the U.S. Attorney's Office clearly stating that the interview was a voluntary debrief, and they each signed the proffer letter. By signing, Mr. Pelice expressly acknowledged that he had "read every word of this debriefing agreement, and its meaning has been fully explained to me by my attorney. After consultation with my attorney, I understand and agree to the contents of this letter." Furthermore, AUSA Seifert informed Mr. Pelice of his rights in the United States[4] and explained the parameters of the letter he signed. Mr. Pelice was given time to speak privately with his counsel at the start of the interview. Being fully informed of the voluntary nature of the interview, Mr. Pelice chose, voluntarily, to proceed with the interview.

## ANALYSIS

### A. Voluntariness Standard

"The Due Process Clause forbids the admission of a confession 'if under the totality of the circumstances it was involuntarily obtained.'" *United States v. Roberson*, 573 F.Supp.3d 209, 217 (D.D.C. 2021) (Bates, J.) (quoting *United States v. Reed*, 522 F.3d 354, 358–59 (D.C. Cir. 2008)). "The ultimate question is whether a defendant's will was overborne and his capacity for self-determination critically impaired as a result of the agents' conduct." *Id.* (quoting *United States v. Hallford*, 816 F.3d 850, 857 (D.C. Cir. 2016) ("*Hallford I*")) (internal quotation marks and brackets omitted). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause . . . ." *Id.* (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).

---

[4] The defense asserts that Mr. Pelice was interviewed "without the provision of the advice of his rights." Def.'s Mot. at 3. On the contrary, he was informed of his rights, and his attorney was present when they were explained to him.

"To determine whether a statement was made voluntarily, 'an inquiring court must conduct the juridical equivalent of an archeological dig into the whole of the circumstances.'" *Id.* (quoting *United States v. Hughes*, 640 F.3d 428, 438 (1st Cir. 2011)). "Pertinent factors in this totality-of-the-circumstances analysis include the defendant's 'age, education, the length of detention, whether the defendant was advised of his rights, and the nature of the questioning.'" *Id.* (quoting *United States v. Avitan*, 349 F. Supp. 3d 23, 31 (D.D.C. 2018)). "But in general, egregious facts are necessary to establish that the statements . . . made during questioning are involuntary, and statements made where the circumstances are less than egregious are usually voluntary." *Id.* at 218 (quoting *Hallford I*, 816 F.3d at 863 (Wilkins, J., dissenting in part and concurring in part)) (internal quotation marks and brackets removed).

B.   **Custodial Interrogation**

"*Miranda* warnings are required where a suspect in custody is subjected to interrogation." *Id.* (quoting *United States v. Vinton*, 594 F.3d 14, 26 (D.C. Cir. 2010)); *see also Miranda v. Arizona*, 384 U.S. 436, 477 (1966). "Whether an individual is 'in custody' for *Miranda* purposes is a two-step inquiry, ultimately asking whether 'the circumstances of the questioning present a serious danger of coercion.'" *Id.* (quoting *United States v. Cooper*, 949 F.3d 744, 748 (D.C. Cir. 2020)). "The first step of this analysis asks a familiar question: whether 'a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave.'" *Id.* (quoting *United States v. Hallford*, 756 F. App'x 1, 6 (D.C. Cir. 2018) (per curiam) ("*Hallford II*")) (footnote omitted). "That 'reasonable person' is not the defendant, but the average person innocent of any crime." *Id.* (quoting *United States v. Lea*, 839 F. App'x 551, 553 (D.C. Cir. 2020) (per curiam)); *accord Florida v. Bostick*, 501 U.S. 429, 438 (1991). "Relevant factors include the location of the questioning, its duration, statements made during

4

the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Id.* (quoting *Howes v. Fields*, 565 U.S. 499, 509 (2012)).

Mr. Pelice's April 28, 2022 interview in the Dominican Republic was a voluntary, non-custodial interview. No *Miranda* warning was required, and Mr. Pelice provided information to law enforcement voluntarily. He was free to stop talking and leave the interview at any time, but he chose to continue. Because the interview was voluntary and non-custodial, there is no basis to suppress Mr. Pelice's statements from that interview.

After his arrival in the United States, Mr. Pelice's first interview with U.S. law enforcement was a voluntary debrief that occurred on July 8, 2022. At the voluntary debrief, Mr. Pelice's counsel was present. Mr. Pelice was informed of his rights and signed a proffer agreement clearly indicating that the interview was voluntary. He was given an opportunity to speak privately with his counsel at the start of the voluntary debrief. He chose to wave his rights and proceed with the voluntary debrief. Because Mr. Pelice was informed of his rights and chose voluntarily to proceed with the interview, there is no basis to suppress Mr. Pelice's statements from that interview.

At no time did U.S. law enforcement subject Mr. Pelice to coercive activity to secure a statement.

In its motion, the defense argues that "any and all subsequent interviews were tainted by the original failure of law enforcement to appropriately advise Mr. Pelice in his April 28, 2022" interview. Def.'s Mem. at 3. However, as explained above, the defense's assertions about the April 28, 2022 interview are false, as are the assertions about the first post-arrest interview. The

defense has not raised any other argument regarding the other interviews and statements of Mr. Pelice. Accordingly, there is no basis to suppress any of his other interviews and statements.

## CONCLUSION

For the foregoing reasons, the motion to suppress must be denied.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


    /s/ *Thomas N. Saunders*
Thomas N. Saunders
Assistant United States Attorney
N.Y. Bar #4876975
National Security Section
601 D Street, N.W.
Washington, D.C. 20530
202-252-7790
Thomas.Saunders@usdoj.gov